IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ANN ROBINETTE, individually<br>And jointly with her husband Eric,<br><br>ERIC ROBINETTE, individually<br>And jointly with his wife Ann,<br><br>      Plaintiffs,<br><br>  v.<br><br>WILLIAM JONES, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-4084-CV-C-NKL<br>)<br>)<br>)<br>) |

ORDER

Pending before the Court is Defendants' Joint Motion for Summary Judgment [Doc. # 43]. For the reasons set forth below, the Motion will be granted.

This is not the first time that Plaintiffs Ann and Eric Robinette ("the Robinettes") have sued these Defendants. Nearly identical pleadings were filed in 2003 against the current and three additional defendants in Case No. 03-4274-CV-C-NKL. In that previous case, the defendants moved jointly for summary judgment but the Robinettes did not respond in timely fashion. Following a Show Cause Order, the Robinettes responded but their response was stricken as filed out of time without leave. After the Court granted leave to refile their suggestions in opposition out of time, the Robinettes instead dismissed their case without prejudice. In 2005, the Robinettes refiled in state court and

1

the case was again removed to this Court. As before, the Defendants moved jointly for summary judgment. Again, the Robinettes did not respond in a timely fashion and the Court issued an Order to Show Cause why summary judgment should not be granted [Doc. # 49]. Again the Robinettes have filed a response out of time without the Court's leave to do so [Doc. # 50].

The response does not specifically object to the Defendants' Statement of Undisputed Facts, nor does it explicitly assert any disputed facts that would preclude summary judgment. Further, the Robinettes' response offers no evidence to support their claims against any of the Defendants beyond reciting the allegations in their Complaint. They do not cite any deposition testimony or other discovery responses in support of their claims despite the fact that they previously sought and received sanctions against defense counsel, claiming prejudice for late discovery responses. Finally, the Robinettes offer no case law in opposition to the Defendants' Joint Motion for Summary Judgment other than a reference to the First Amendment. Simply put, the Robinettes have not provided the Court with any real opposition to Defendants' Motion other than a recital of the allegations from their Complaint. The Court must, therefore, rule on the Defendants' Joint Motion in view of the facts presented in the Defendants' Statement of Undisputed Facts.[1]

---

[1] Given the delays in the case thus far and the dearth of evidence or case law in the Robinettes' Suggestions in Opposition, the Court concludes that there is little value to be gained by striking their Suggestions until they seek leave to file them out of time. The Court will make its ruling based on the Suggestions filed.

2

**I.      Factual Background**

On April 13, 2003, Defendant William Jones ("Jones") of the Centralia Police Department issued a parking ticket to Ann Robinette for allegedly "parking vehicle at place where official signs prohibit parking other than police vehicles." The section of street where Ms. Robinette parked had five parking spaces and three signs indicating "No Parking – Reserved for Police Cars Only." The space Ms. Robinette allegedly parked in did not have a sign immediately adjacent to it. The parking ticket provided a court date of May 12, 2003, and further stated: "YOUR FAILURE TO APPEAR IN COURT AT THE TIME SPECIFIED ON THIS CITATION OR OTHERWISE RESPOND TO THE CITATION AS DIRECTED MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE AND DRIVING PRIVILEGE AND MAY RESULT IN A WARRANT BEING ISSUED FOR YOUR ARREST."

Despite the information provided on the parking ticket, Ms. Robinette failed to appear for her scheduled court date because she "forgot about the parking ticket," and the Boone County Circuit Court issued a capias warrant for her arrest for failure to appear. Officers Jones and Richard Fentiman ("Fentiman") executed the warrant on June 7, 2003, by arresting Ms. Robinette at her home at around 1:00 a.m. and transporting her to the Centralia police station for processing. The warrant for Ms. Robinette's arrest was the third of ten warrants executed that night. Until they were executed, the warrants were maintained in a Centralia Police Department folder containing all of the active warrants to be served. Jones and other Centralia police officers have a standing duty to check the

folder for active warrants and serve them. The City of Centralia has no policy regarding the time of day arrest warrants are to be served.

Following Ms. Robinette's arrest, Mr. Robinette drove to the police station and posted the required bond to release his wife from jail. At the police station, Mr. Robinette parked in a space clearly marked "No Parking – Reserved for Police Cars Only." Jones directed Mr. Robinette to move his vehicle or he would receive a parking ticket. When Mr. Robinette refused, Jones issued the citation and directed Mr. Robinette to move his car or it would be towed. When Mr. Robinette again refused to move his car, Jones radioed another officer, Defendant Tim Gassen ("Gassen"), to start the process to have Mr. Robinette's car towed.

After he had bailed his wife out of jail, the Robinettes attempted to retrieve their car before it was towed, but Jones and Fentiman physically impeded them from approaching the area where their car was being attached to the tow truck. Although Mr. Robinette was not prevented from leaving, he elected to remain because he thought he would be able to receive his car back from the tow truck driver. It is unclear from the evidence before the Court whether the Robinettes retrieved their car then, later, or not at all. On September 8, 2003, the City of Centralia dismissed the tickets, though it is unclear from the evidence before the Court why the charges against the Robinettes were dropped.

## II. Discussion

### A. City of Centralia

As per the Court's July 8, 2005, Order [Doc. # 21], the only counts remaining against the City of Centralia are Counts I and II for relief under 42 U.S.C. § 1983. The Supreme Court has held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, when a "policy or custom" of a local government works to deprive someone of a constitutional right, that municipality may be held liable under § 1983. *Id.* at 694. The Supreme Court has explained that the first step in analyzing municipal liability is to determine "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Section 1983 liability based on official "policy" requires "'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Liability based on "custom" requires "a pattern of 'persistent and widespread' unconstitutional practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." *Id.* at 646 (quoting *Monell*, 436 U.S. at 691). Thus, to hold the City of Centralia liable under 42 U.S.C. § 1983, the Robinettes must establish some facts showing either that one or more of the City's final decision-makers made a deliberate choice to follow the course of action harming the

5

Robinettes, or that the City had a pattern of persistent and widespread unconstitutional practices which harmed them.

Following discovery, the Robinettes have offered no evidence of any official policy or pattern of persistent and widespread practices by the City of Centralia which caused them constitutional injury. The only mention of the City in the Robinettes' Suggestions in Opposition to Summary Judgment is an unsupported assertion that the City failed to send the Robinettes a written warning of the consequences of failure to appear as required by an uncited Missouri law. Even assuming this failure, the Robinettes have produced no evidence from which a reasonable juror could find that the City had a policy or custom of failing to send the purportedly required written warning. The Court concludes that summary judgment in favor of the City of Centralia is appropriate.

### B. Individual Officers

#### 1. John Landis

The Robinettes do not contest Landis's Suggestions in Support of Summary Judgment [Doc. # 46], but instead ask that he be dismissed from the case. Landis was similarly sued and dismissed in the Robinette's previously filed case, No. 03-4274-CV-C-NKL. Neither their response to his Motion for Summary Judgment, nor indeed even their Complaint, allege any specific conduct on the part of Landis, let alone any showing that he caused the Robinettes injury. The Court will grant summary judgment in Landis's favor.

#### 2. Officers Jones, Fentiman, and Gassen

As per the Court's July 8, 2005, Order [Doc. # 21], all counts alleged against the remaining officers in their official capacities have been dismissed. Remaining against them in their individual capacities are Counts I and II under § 1983, and Counts III through IX for various state law torts. With regard to executing the arrest warrant, Jones and Fentiman contend that they are shielded by absolute quasi-judicial immunity insofar as they were carrying out a judicial order. They cite *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) for the proposition that "[a] judge's absolute immunity extends to public officials for 'acts they are specifically required to do under court order or at a judge's direction.'" *Id.* (quoting *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994)). They also point the Court's attention to *In re Foust*, 310 F.3d 849, (5th Cir. 2002), in which that court held that "[l]aw enforcement officers have absolute immunity . . . for enforcing the terms of a court order but only qualified immunity for manner in which they choose to enforce it."

The cases cited by the Defendants are inapplicable to the present facts. In *Martin,* the Eighth Circuit concluded that a police officer had quasi-judicial immunity for removing an unruly litigant from the courtroom at the judge's verbal direction. 127 F.3d at 721. *Robinson* also involved immunity for courtroom conduct. In that case, the Eighth Circuit rejected absolute immunity for the bailiff, noting "the Supreme Court's presumption that qualified, rather than absolute, immunity is sufficient to protect government officials in the exercise of their duties." 15 F.3d at 108. *In re Foust* involved the execution of a writ of replevin. 310 F.3d at 852. None of the cases cited by the

7

Defendants involves the execution of an arrest warrant, and the Court has not found any precedent for bestowing absolute immunity on officers executing arrest warrants. The Court is, therefore, guided by the presumption that "qualified . . . immunity is sufficient to protect government officials in the exercise of their duties." *Robinson*, 15 F.3d at 108.

### a. Federal Claims

In their Suggestions in Support of Summary Judgment, Officers Fentiman [Doc. # 45], Gassen [Doc. # 47], and Jones [Doc. # 48] argue that they are also shielded from liability under § 1983 on the basis of qualified immunity. "Qualified immunity shields [police officers] from suit if 'a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information [that he] possessed.'" *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations omitted). In analyzing the issue of qualified immunity, the "first inquiry is . . . 'do the facts alleged show the officer's conduct violated a constitutional right?'" *Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785, 789 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1639 (2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If so, the next inquiry 'is to ask whether the right was clearly established.'" *Id.* To do this, the Eighth Circuit asks "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.*

The allegations against Fentiman stem from his part in the arrest of Ms. Robinette at her home and the post-arrest events that took place outside of the police station when Mr. Robinette's car was towed. As to the arrest, Fentiman executed a facially valid arrest warrant. The Robinettes imply that the warrant was invalid because they did not receive a written notice that arrest could result from a failure to appear. However, they cite no authority for this proposition, nor do they offer any evidence that Fentiman knew or should have known that the warrant was invalid. Even assuming the warrant was invalid, the Court finds, based on the evidence before it, that a reasonable officer would not have known of its invalidity or that the warrant's execution deprived Ms. Robinette of any constitutional rights.

Regarding Fentiman's conduct on the street when Mr. Robinette's car was being towed, the Plaintiffs allege that Fentiman told Mr. Robinette that he had to remain on the sidewalk and physically impeded Ms. Robinette from approaching the tow truck driver in the street. With respect to the section 1983 claims, then, the question is whether Fentiman did something that was plainly incompetent or a knowing violation of the law. *See Anderson*, 483 U.S. at 641. Framed somewhat more succinctly, the issue is whether it would have been "'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Robinettes concede that Mr. Robinette's car was parked in a spot clearly marked "No Parking – Reserved for Police Cars Only." The evidence before the Court shows that Fentiman did nothing more

9

than keep the Robinettes from interfering with the towing of their illegally parked car.[2] An objectively reasonable officer, doing what officer Fentiman did in the situation he confronted, would not have clearly known that his conduct was unlawful. Accordingly, Fentiman is entitled to qualified immunity from the Robinette's § 1983 claims.

The only conduct alleged against Officer Gassen is that he called a tow truck at Jones's request to remove a car parked in a space with a "No Parking – Reserved for Police Cars Only" sign. Even assuming that his conduct did deprive the Robinettes of rights secured by the Constitution and laws of the United States, there is no evidence to suggest that an objectively reasonable officer would have known that calling a tow truck in such circumstances was unlawful. Gassen is entitled to qualified immunity from the Robinette's § 1983 claims.

With regard to Jones, the Robinettes allege that he deprived them of their constitutional rights by issuing two parking tickets, serving the arrest warrant, initiating a vehicle tow process, and physically impeding the Robinettes from approaching the tow truck driver. Since Jones issued the original ticket which precipitated the arrest warrant, his knowledge is slightly different from the other officers. The parties agree that there are five spaces and only three "No Parking–Reserved for Police Cars Only" signs on the

---

[2]Whether their car actually was illegally parked is a different question. The Robinettes suggest that no City ordinance authorized the exclusion of non-police cars from the designated spaces. This may have been why the tickets were eventually dismissed. However, whether the car actually was illegally parked is irrelevant to the discussion of whether a reasonable officer, seeing a privately owned vehicle parked in a place designated as "No Parking – Reserved for Police Cars Only" would know it was unlawful to keep the car's owners clear of the tow truck once the towing had commenced.

10

section of Sneed Street where Ms. Robinette parked her car. They also agree that Ms. Robinette parked in one of the two spots without a sign directly adjacent to it. Under the two-step inquiry followed by the Eighth Circuit, the first issue is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. Since the spot in which she parked was not specifically designated as "No Parking – Reserved for Police Cars Only," the Court must conclude, viewing the facts in the light most favorable to the Robinettes, that Jones's conduct could have violated Ms. Robinette's rights. However, under the second step, the Court cannot so easily conclude that a reasonable officer would not have viewed the three signs as inclusive of the two intermediate spaces. Indeed, it seems most unlikely that an objectively reasonable officer would have known he was violating a clearly established right by ticketing a car parked between two "No Parking – Reserved for Police Cars Only" signs even if the middle space had no sign itself. On this basis, the Court concludes that Jones is entitled to qualified immunity with regard to issuing the initial parking ticket.

As for executing the arrest warrant, initiating the towing process, and impeding the Robinettes from communicating with the tow truck driver, Jones is entitled to qualified immunity on the same grounds as Fentiman, discussed above.

### b. State Tort Claims

11

As to the remaining state tort law claims, all three officers claim official immunity. "'The official immunity doctrine provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions.'" *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (quoting *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991)). "Discretionary acts require 'the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued.'" *Warren v. State*, 939 S.W.2d 950, 953 (Mo. Ct. App. 1997) (quoting *Rustici v. Wiedemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984)).

The purpose of the official immunity doctrine is to permit public officials to effectively exercise their discretion and judgment when carrying out official business without the chilling effect that the fear of litigation might impose. *See id.*; *see also Brummitt v. Springer*, 918 S.W.2d 909, 912 (Mo. Ct. App. 1996) (explaining that "[t]he official immunity doctrine serves society's compelling interest in vigorous and effective administration of public affairs by protecting public officers from fear of personal liability"). In *Seiner*, a police officer was sued under section 1983 and under state law by the family of a man who was killed when the officer fired his weapon three times at the man. 304 F.3d at 811-12. The state law claims included battery, assault, and excessive force. *Id.* at 812. The Eighth Circuit rejected the plaintiff's argument that official immunity only applied to negligent conduct and held that the officer was entitled to immunity for his intentional acts. *Id.* at 813. *See also State ex rel. Twiehaus v. Adolf*, 706

S.W.2d 443, 446 (Mo. banc 1986) (explaining "[a]lthough it is stated a variety of ways, it is generally held that official immunity applies to all discretionary acts except those done in bad faith").

The Robinettes have offered no authority, nor even any argument, that any of the alleged conduct by the Defendants was ministerial. Arrests, including any harmful touching, are generally considered discretionary acts that fall under the ambit of official immunity. *See State ex rel. Boshers v. Dotson*, 879 S.W.2d 730 (Mo. Ct. App. 1994); *DaVee v Mathis*, 812 S.W.2d 816, 817 (Mo. Ct. App. 1991). The same may be said for issuing parking tickets and impeding car owners from interfering with the towing of an illegally parked car: both involve the exercise of the officer's judgment in the given situation. The Court concludes that the remaining Defendants are entitled to official immunity from the Robinettes' state tort law claims.

### III. Conclusion

Accordingly it is

ORDERED that Defendants' Joint Motion for Summary Judgment [Doc. # 43] is GRANTED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: December 12, 2005
Jefferson City, Missouri